476 So.2d 503 (1985)
STATE of Louisiana
v.
Arley RODRIGUEZ.
No. 85KA0106.
Court of Appeal of Louisiana, First Circuit.
October 8, 1985.
*505 Margaret A. Coon, Asst. Dist. Atty., Covington, for State.
David J. Knight, Covington, for defendant.
Before GROVER L. COVINGTON, C.J., and WATKINS and SHORTESS, JJ.
WATKINS, Judge.
Defendant, Arley Rodriguez, was charged by bill of information with pornography involving a juvenile, a violation of LSA-R.S. 14:81.1,[1] in connection with an *506 incident that occurred in April of 1983. Defendant was tried by a jury and convicted as charged. He was subsequently sentenced to serve three years with the Department of Corrections without benefit of probation, parole or suspension of sentence.
In this appeal, defendant alleges five assignments of error:
1. The trial court erred in denying the motion to suppress the evidence.
2. The trial court erred in refusing to permit the jury to review the affidavit used in support of the search warrant, after the jury had begun deliberations.
3. The trial court erred in not appointing an interpreter for defendant.
4. The trial court erred in denying the motion for a post verdict judgment of acquittal and the motion for new trial.
5. Because of error patent on the face of the record, the conviction should be reversed.
Sometime in April, 1983, the victim's mother learned that her future father-in-law was gravely ill in Laurel, Mississippi. She called on her neighbor, defendant herein, to look after her four small children while she drove to Laurel. Defendant had frequently served as her baby-sitter. The victim's mother had even allowed defendant to stay in her trailer for approximately a month in early 1983 while defendant searched for a job. At approximately 2:00 p.m., she left her trailer in Slidell and did not return until 11:00 p.m. The victim was eight years old at the time of the crime and was the oldest child. That evening, after the three smaller children had gone to bed, defendant proceeded to take three nude photographs of the victim. Defendant told her not to tell anyone about the incident.
On July 11, Sergeant Charles Mule of the Slidell Police Department learned from a confidential informant that defendant had in his possession three nude photographs of a white female juvenile. On July 12, Sergeant Mule and Sergeant Emily Holden contacted the victim's mother and the victim. The victim gave a taped statement verifying the information Sergeant Mule had previously obtained. The victim stated she had told no one about the incident. A search warrant was obtained and the photographs were found in defendant's trailer, as was a "Polaroid One-Step" camera.

ASSIGNMENT OF ERROR NUMBER ONE:
By this assignment of error, defendant alleges that the trial court erred in denying the motion to suppress the evidence. It is defendant's contention that the affidavit supporting the search warrant was defective and that all evidence seized pursuant to the search warrant should have been suppressed.
Article 1, § 5 of the Louisiana Constitution of 1974 requires that a search warrant may issue only upon an affidavit establishing probable cause to the satisfaction of an impartial magistrate. LSA-C. Cr.P. art. 162. Probable cause exists when the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that an offense has been committed and that evidence or contraband may be found at the place to be searched. State v. Johnson, 408 So.2d 1280 (La.1982); State v. Tranum, 384 So.2d 367 (La.1980); State v. Morgan, 376 So.2d 99 (La.1979).
The defense argues that the affidavit which supports the search warrant is defective because it does not specifically state the date the confidential informant viewed the photographs.
The affidavit states that Detective Mule received a telephone call on July 11, 1983, *507 from a confidential informant who in the past had given him information leading to numerous arrests and also to the recoveries of stolen properties. At a meeting with the informant, Detective Mule was told that Arley Rodriguez had shown the informant three nude photographs of a white female, age nine or ten. Rodriguez told the informant that he was the baby-sitter for this girl while the mother was at work. The informant stated that defendant offered to show him more pictures, but he became disgusted and left defendant's trailer. The informant pointed out the location of defendant's trailer and the victim's trailer.
On July 12, 1983, Detective Mule and Sergeant Emily Holden contacted the victim, who confirmed that defendant had taken three nude photographs of her at her trailer with a camera that develops the pictures. Defendant gave her a small amount of money. The victim also stated that defendant had tried to kiss her several times. The victim further stated that defendant kept the photos in his trailer concealed behind some other pictures.
The "tip" was based on personal observation of the photographs by the informant at defendant's trailer. The affidavit alleges that the confidential informant had provided reliable information in the past. Thus, one of the requisites for the issuance of a warrant under LSA C.Cr.P. art. 162 is met in that the warrant application provides factors which support the credibility of the informant. Additionally, the officers independently corroborated the accuracy of the informant's report by contacting the victim and obtaining a taped statement which verified the facts of the crime. Specific independent corroboration of the accuracy of a report by an unidentified informant supports the credibility and reliability of the unidentified informant. State v. Davis, 461 So.2d 1256 (La.App. 1st Cir.1984), writ denied, 466 So.2d 1299 (La. 1985).
The affidavit itself makes no mention of the date the informant viewed the photographs. Defendant's argument is based solely on a remark made by the prosecutor at the hearing on the motion to suppress that the informant viewed the pictures on July 11th. On the basis of that remark defendant presented a witness, Cynthia Graham, who testified that she was in defendant's trailer from 5:00 p.m. until midnight on that date. Defendant testified he worked from 7:00 a.m. to 5:00 p.m. and saw only Ms. Graham. Defendant contends that this testimony together with his claim that he did not own a camera in April of 1983, destroys the credibility of the informant and establishes that the search warrant was issued without probable cause. We disagree.
The task of the reviewing court in evaluating a search warrant affidavit is simply to insure that the judge had a substantial basis for concluding that probable cause existed. State v. Lingle, 436 So.2d 456 (La.1983). A magistrate's determination of probable cause should be accorded great deference by a reviewing court. State v. Ogden, 391 So.2d 434 (La.1980). We find that the affidavit contained sufficient information obtained from the informant and victim which indicated that defendant still possessed the pictures at the time the warrant was issued.
Considering all of the relevant circumstances, we conclude that the issuing magistrate had a reasonable basis for finding the informant's information reliable and for determining that there was probable cause to issue the search warrant. Accordingly, the trial court's ruling denying the motion to suppress was correct. This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER TWO:
In this assignment of error, defendant argues that the trial judge erred when he refused to allow the jury, during deliberations, to view the affidavit used in support of the search warrant.
During trial, defendant's attorney introduced into evidence the affidavit used in support of the search warrant. It was *508 shown to the jury at that time. During deliberations the jury asked to see the affidavit once more. This request was denied by the trial judge.
Defendant contends that the trial judge should have inquired into the jury's reason for wishing to view the document because of the possibility that only signatures were to be examined. The general rule as expressed by LSA-C.Cr.P. art. 793 is that the jury is not to inspect written evidence except for the sole purpose of a physical examination of the document itself to determine an issue which does not require the examination of the verbal contents of the document. State v. Perkins, 423 So.2d 1103 (La.1982).
The authenticity of the signatures on the affidavit was never questioned by the defendant. This court fails to see how the examination by the jury of the signatures could have assisted the jury in the determination of "an issue" as required by Perkins, supra. It is apparent that the jury wished, for some reason, to re-examine the verbal contents of the affidavit. In his brief, defendant concedes that such an examination is prohibited by Perkins, supra. We agree. Accordingly, this assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER THREE:
Defendant contends the trial court erred in failing to furnish an interpreter during trial since defendant was unable to understand the testimony fully and was unable to present his own testimony intelligibly.
The record shows that no motion requesting the appointment of an interpreter was filed by the defense prior to or during the trial. Defense counsel obviously believed defendant could comprehend English as evidenced by the fact that he testified at trial in his own behalf. We note that defendant filed a "Motion for a Bond Hearing" in proper person and filed a letter dismissing his attorney. While his testimony at trial indicates defendant has some slight difficulty expressing himself, there is absolutely no indication that defendant could not comprehend the testimony, as defense counsel alleges.
On the record presently before us, there has been no showing that the trial court erred by not furnishing defendant an interpreter during trial. See State v. Thucos, 390 So.2d 1281 (La.1980).
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER FOUR:
In this assignment of error, defendant argues the trial court erred in denying his motion for post verdict judgment of acquittal and motion for new trial because the evidence was insufficient to convict him. Specifically, defendant alleges the victim and her mother conspired to frame defendant because the mother was angry with defendant for moving out of her trailer and "she wanted revenge". Defendant also contends the victim was angry with him because he had disciplined her once while he was babysitting. Defendant further alleges that he did not own a camera in April, 1983; and that, even if he had a camera, he would not know how to operate it.
There is absolutely no testimony supporting defendant's allegation of "revenge". In fact, the victim's mother testified that she had known defendant for seven to eight years and that, until this incident, he was a friend of the family. She further testified that she had never been romantically involved with defendant; rather, defendant was "like a brother". After defendant moved to Slidell from Franklinton, she had allowed him and his small son to stay at her trailer for about a month while he sought employment. After he found a job, Rodriguez moved into a nearby trailer but remained good friends with the victim's mother. When it became necessary for her to make the trip to Laurel, Mississippi, defendant agreed to babysit for her. She did not learn about the pictures until she was contacted by Detective Mule.
The victim testified that the incident occurred on the day her mother drove to Laurel. After the younger children had gone to bed, she began to take a shower. *509 Defendant entered the bathroom and pulled the shower curtain back. He instructed her to pose for him, and he then took three pictures. She testified that she then went to bed, but defendant came into the room and asked her to let him take some more pictures, to which she refused. She further testified that she pulled defendant's hair "as hard as [she] could" to get him to leave her bedroom. She identified the camera seized at defendant's trailer as the camera defendant used that night, and testified that no one else had ever taken any nude photographs of her. She did not tell her mother about the incident because defendant told her not to do so.
Defendant took the stand in his own behalf. He testified that the victim's mother gave him permission to discipline the victim if she misbehaved and that he had spanked her on one occasion. He denied taking the pictures and insisted that someone had hidden the pictures in his trailer without his knowledge. He testified that he did not own a camera in April, 1983, and did not even know how to operate the camera found in his trailer. Furthermore, he said he had purchased that camera from Roger Peddington three or four weeks before the search warrant was executed, which would be some two months after the incident took place.
A defense witness, Roger Peddington stated he sold defendant a "One-Step" camera on June 9, 1983. A hand-written receipt was introduced into evidence which reads:
I, Roger Peddington sold a bike, camera & stereo to Arley Rodriguez on the 9th day of June.
Bike - $60.00
Stereo - $60.00
Camera - $25.00
 (signed) Roger G. Peddington
However, on cross-examination, this was discredited when Peddington admitted that he had written the "receipt" just a few days before trial in May, 1984.
The applicable standard for reviewing sufficiency is whether or not, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the essential elements of the crime were proven beyond a reasonable doubt. LSA-C.Cr.P. art. 821; State v. Korman, 439 So.2d 1099 (La.App. 1st Cir. 1983). Where there is conflicting testimony as to factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Johnson, 446 So.2d 1371 (La.App. 1st Cir.1984), writ denied, 449 So.2d 1347 (La.1984). A determination of the weight of the evidence is a question of fact over which this court has no appellate jurisdiction in criminal cases. La. Const, art. V, § 10(B) (1974, amended 1980). State v. Norman, 448 So.2d 246 (La.App. 1st Cir.1984), reversed in part on other grounds, 452 So.2d 1178 (La.1984). Thus, a determination of the weight of the evidence rests solely in the sound discretion of the trier of fact.
The jury's verdict indicates that, after considering the credibility of the witnesses and weighing the evidence, it accepted the testimony of the victim and her mother along with the other evidence offered by the state and rejected the self-serving testimony of defendant. Our review of the evidence presented at trial convinces us that it is sufficient to uphold the determination of the jury. Accordingly, this assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER FIVE:
In this assignment of error, defendant alleges there is error patent on the face of the record.
The only patent error revealed by our review is that the record does not indicate that defendant was re-arraigned after the bill of information was amended to correct the time interval during which the instant offense was alleged to have occurred. (The bill was amended to read that the offense occurred between the 1st day and the 30th day of "April" instead of "June".) In State v. Bluain, 315 So.2d 749 *510 (La.1975), the Louisiana Supreme Court noted that, where amendments are designed to cure deficiencies and not to alter the nature of the crime, as in the instant case, defendant is not entitled to a re-arraignment. Further, the record fully establishes that defendant and his counsel were present at the time of arraignment on the original bill. LSA-C.Cr.P. art. 551 and 555.
Accordingly, this assignment lacks merit.
Therefore, the sentence and conviction as stated above are affirmed.
AFFIRMED.
NOTES
[1] The version of LSA-R.S. 14:81.1 applicable to this crime was enacted by Acts 1977, No. 97, § 1, and amended by Acts 1981, No. 502, § 1; it provided:

A. Pornography involving juveniles is:
1) the photographing, videotaping, filming, or otherwise reproducing of any act of sexual conduct or the obscene, lewd, or lascivious exhibition of the genitals or pubic area involving a child under the age of seventeen; or
2) the solicitation or coercion of any child under the age of seventeen for the purpose of photographing, videotaping, filming, or otherwise reproducing any act of sexual conduct or the obscene, lewd, or lascivious exhibition of the genitals or pubic area involving a child under the age of seventeen; or
3) the sale, distribution, or possession with intent to sell or distribute any photographs, films, videotapes, or other reproductions of any act of sexual conduct or the obscene, lewd, or lascivious exhibition of the genitals or pubic area involving a child under the age of seventeen.
B. Possession of three or more of the same photographs, films, videotapes, or other reproductions shall be prima facie evidence of intent to sell or distribute.
C. Lack of knowledge of the juvenile's age shall not be a defense.
D. Whoever commits the crime of pornography involving juveniles shall be fined not more than ten thousand dollars and be imprisoned at hard labor for not less than two years or more than ten years, without benefit of parole, probation, or suspension of sentence.
E. Each photograph, film, videotape, or other reproduction of any sexual conduct involving a child under the age of seventeen shall be contraband and shall be seized and disposed of in accordance with law.